The Regina Corporation v. Commissioner.
Regina Corp. v. Commissioner
Docket No. 8367.
United States Tax Court
1947 Tax Ct. Memo LEXIS 216; 6 T.C.M. (CCH) 514; T.C.M. (RIA) 47133; May 7, 1947
William H. Osborne, Jr., Esq., 744 Board St., Newark, N.J., for the petitioner. Francis X. Gallagher, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in petitioner's excess profits tax for the calendar year 1942 in the amount of $145,026.66. The issues involve the computation of petitioner's invested capital for excess profits tax purposes. Findings of Fact Petitioner is a New Jersey corporation, organized in 1922, with its principal place of business at Rahway, New Jersey. It filed its excess profits tax return for 1942 with the collector of internal revenue for the fifth district of New Jersey. It disclosed no tax due. Prior to the organization of petitioner *217 in 1922, a corporation, called the Regina Co., which had been in existence prior to March 1, 1913, was adjudged a bankrupt by the United States District Court in New Jersey. Receivers were appointed, who continued the operation of the business pursuant to the instructions of the court. A plan of reorganization was formulated by a creditors' committee, and accepted by creditors holding claims against the bankrupt in the amount of $944,021 out of total liabilities of about $988,000. The plan provided that the creditors would deposit proofs of claim with power of attorney with the committee; that a new corporation would be organized to take over the property of the bankrupt, and to issue to the consenting creditors its stock in the proportion of their respective claims, in full settlement thereof. It further provided that the creditors' committee might buy the assets of the bankrupt. Pursuant thereto, the creditors offered to buy all the assets of the bankrupt from the receivers and to pay therefor $200,000, payable as follows: sufficient cash to pay priority claims and administration expenses, a credit in the amount of dividends payable to the consenting creditors, and the balance in *218 cash. The offer provided that the assets were to be conveyed either to the creditors' committee or to a corporation to be organized subject to all liens and encumbrances except priority claims. Petitioner was thereupon organized for the purpose of taking over the "business, good will, and assets" of the Regina Co. The bankruptcy court approved the acceptance of the committee's offer, and directed the trustees to transfer the assets to petitioner. On April 16, 1922, therefore, the trustees conveyed all the real and personal property of the bankrupt to the newly organized Regina Corporation, which is the petitioner here. The balance sheet of the bankrupt corporation immediately prior to the transfer was as follows: ASSETS
Current Assets: Cash on hand and in banks
$ 23,570.54
Accounts and bills receivable - trade
$ 89,014.36
Less reserve
50,878.56
$ 38,135.80
Receivers' accounts receivable
58,862.15
96,997.95
Interest accrued on bills rec.
1,072.39
Inventories
194,500.65
Total Current Assets
$316,141.53
Prepaid expenses and deferred charges
1,518.95
Fixed Assets: Land
20,000.00
Buildings
81,884.84
Machinery and equipment
136,846.61
Patents and licenses
4,624.09
$561,016.02 *
LIABILITIES
Current Liabilities: Trustees vouchers payable
$ 10,785.80
Reserve for trustee's accounts payable
Accounts and bills payable - receiver
14,981.61
Accounts and bills payable - trade
837,938.36
Accrued taxes
1,500.00
Accrued sundry expenses
6,059.63
Total Current Liabilities
$871,265.40
Long Term Liabilities: Debenture bonds
153,647.50
Mortgage on real estate
12,000.00
Capital Stock: Preferred
$500,000.00
Common
300,000.00
800,000.00
Surplus (deflcit)
(1,275,896.88)
$ 561,016.02
*219 Petitioner made certain adjustments to these figures, as indicated below, and entered the items in its books: Adjustments
Amounts entered
ASSETS
Current Assets: Cash on hand and in banks
$ 23,570.54
Accts. and bills receivable - trade
$89,014.36
Less reserve
$ 24,380.10
75,258.66
Receivers' accts. and bills receivable
$13,755.70
58,862.15
72,617.85
Interest accrued on bills receivable
1,072.39
Inventories
85,465.26
109,035.39
Total Current Assets
$206,296.17
Prepaid expenses and deferred chgs.
1,518.95
Fixed Assets: Land
12,000.00
8,000.00
Buildings
19,884.84
62,000.00
Machinery and equipment
105,172.01
31,674.60
Patents and licenses
4,623.09
1.00
$309,490.72
LIABILITIES
Current Liabilities: Trustees vouchers payable
10,785.80
Reserve for trustees accts. payable
70,000.00
70,000.00
Accounts and bills payable - receiver
10,000.00
Accrued taxes
1,500.00
Accrued sundry expenses
342.30
Total Current Liabilities
$ 92,628.10
Long Term Liabilities: Mortgage on real estate
12,000.00
Reserve for liquidation losses
25,000.00
25,000.00
Net value of assets as ent. by Regina Corp.
179,862.62
$309,490.72
*220 Petitioner issued to the consenting creditors 9,440.21 shares of no-par value common stock, at a stated value of $100 per share, or a total stated value of $944,021, issued in exact proportion to the amount of the respective claims of consenting creditors. Following the initial issuance of the 9,440.21 shares of stock, there has been issued by petitioner stock of the following classes in the amounts indicated below: CLASS
Shares
Amount
Common Stock - No Par Value
April, 1923: Issued to employees for cash at $20 per share
$ 559.79
$ 11,195.80
December, 1924: Issued to Reynolds Fish for services in connection with financ-
ing of $200,000 7% 5-year bonds
1,000.00
30,000.00
$1,559.79
$41,195.80
Class A Preferred Stock 6% Non-cuml.
1928-1929 issued for indebtedness
Issued to: General Contract Purch. Corp.
$479,816.00
4,798.16
479,816.00
Westinghouse Acceptance Corp.
92,284.00
922.84
92,284.00
Chatham-Phenix Nat'l Bk. & Trust
27,900.00
279.00
27,900.00
$600,000.00
$6,000.00
$641,195.80
Class B Preferred Stock 7% Cuml.
Jan. 3, 1938, issued for $200,000 bonds outstanding and $7,000
unpaid interest
2,070.00
207,000.00
Class C Preferred Stock
1928-1929 issued for indebtedness to: General Contract Purchase Corp.
748.95
74,895.00
Westinghouse Acceptance Corp.
310.17
31,017.00
$1,059.12
$105,912.00
$954,107.80
Less: Redemption for cash in 1938
147.93
Total
$953,959.87
*221 Respondent computed petitioner's invested capital as follows: 1922
Original net assets trans-
ferred by creditors of the
bankrupt
200,491.01 *
1923
Sold to employees for cash
11,195.80
1924
To Reynolds, Fish & Co. for
services
30,000.00
1928
To creditors for liabilities
(Class A)
600,000.00
1928
To creditors for debentures
(Class B)
207,000.00
1928
To creditors for liabilities
(Class C)
105,912.00
Total
1,154,598.81
Less: 1938
Redeemed for cash 138.93
1938
Redeemed for cash 9.00
147.93
Average equity invested capital
1,154,450.88 **
Petitioner made a reduction of $50,000 in indebtedness in the year 1942, subsequent to September 1, of that year. It made no election to *222 take a credit on account thereof in its return filed for the taxable year. Opinion KERN, Judge: The first question before us relates to the computation of petitioner's invested capital for excess profits tax purposes. The first point raised, in that connection, arises because of the provision in section 718 (a) (2) of the Internal Revenue Code, relating to that factor included in invested capital which consists of property paid in for stock, which reads: "* * * If the unadjusted basis of the property is a substituted basis, such basis shall be adjusted, with respect to the period before the property was paid in, by an amount equal to the adjustment proper under section 115 (1) for determining earnings and profits; * * *" Petitioner contends its basis for the property paid in for its stock in 1922 was a substituted basis, since that transaction was a tax-free reorganization under the statute then in effect. Respondent makes no argument on that point, but argues instead, that if it be assumed to have been so, petitioner has not offered adequate proof of what the basis of the property was in the hands of petitioner's predecessor. Section 718 (a) (2) of the Internal Revenue Code *223 provides that equity invested capital shall include property paid in for stock, or as paid-in surplus, or as a contribution to capital, in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange. Section 113 (a) (7) of the Internal Revenue Code provides that in the case of property transferred to a corporation after 1917 and before 1936, in connection with a reorganization, and immediately after the transfer, an interest or control in such property of 50% or more remained in the same persons or any of them, the unadjusted basis for determining gain or loss shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. The property involved here was transferred in 1922 in connection with a reorganization, and immediately thereafter all the stock of the new corporation was held by the equitable owners of the old corporation. It would therefore follow, and respondent does not argue otherwise, that petitioner is entitled to use as its basis for the *224 property so acquired, the basis of its predecessor. [1]
This being true, the contention of the respondent on this point assumes serious proportions. It is the respondent's position that petitioner has failed to prove the basis which it claims it is entitled to use. In the statement attached, to the determination of deficiency, respondent explained the deficiency in excess profits tax for 1942 as follows: "It has been determined that your invested capital for [1942] aggregated * * * $1,211,978.28 * * *, and your excess profits tax liability has been adjusted accordingly." The taxpayer in its petition alleged six errors. One of them reads as follows: "(b) Inclusion in invested capital of property acquired in a tax-free reorganization in 1922, at a figure of $200,491.01, instead of at the substitute basis of $526,387.92, pursuant to section 718 (a) and 761 (Supplement C) of the Internal Revenue Code." In the allegation of facts relied on by petitioner there appears the following: "As of March 27, 1922, the adjusted basis of the assets of the bankrupt was $526,387.92 * * *." The respondent, *225 in his answer, denied all of the allegations of fact contained in paragraph 5 of the petition, except the allegation that petitioner, in its excess profits tax return for 1942, made no claim of credit for debt retirement. At the trial of this case, counsel for petitioner stated the facts pertinent to this issue, including the statement: "Now, at the time of the transfer the adjusted basis of the assets of the old company was $526,387.92." At the trial two witnesses testified for petitioner. Their testimony is contained in five pages of the transcript. Three exhibits were introduced in evidence on behalf of petitioner. One of these contained the balance sheets of the Regina Co., and of petitioner before and after the acquisition of the assets of the former by the latter. In identifying this exhibit one of petitioner's witnesses was asked the following questions and gave the following answers: "Q. Now, with respect to the assets, does this statement show the assets transferred and the book values as set forth in the old company's books? "A. It does. "Q. What is the total of the assets transferred? "A. The total of the assets were $561,016.02 subject to liabilities of $34,628.10. *226 "Q. Making a net value of what? "A. $526,387.92." Respondent, in pressing his contention that petitioner has failed to prove the amount of its substituted basis, argues that there is nothing in the record to show that the "book values" of the buildings, machinery and equipment represented their cost less depreciation allowed or allowable; that there is nothing to show that those assets, if any acquired before March 1, 1913, are carried at cost or at their fair market value as of that date; and nothing to show whether the "book value" of the inventories represents cost or market price or some other valuation. Petitioner, in its reply brief, contends that it has submitted evidence which constitutes a prima facie showing of its predecessor's basis. From this somewhat exhaustive statement of the pleadings and the evidence, two conclusions are inescapable: (1) the amount of the basis of petitioner's predecessor was at issue herein, and (2) the only evidence as to the amount of such basis consists of a balance sheet of the predecessor corporation showing the book value of its assets at a time immediately prior to their transfer to petitioner. While this evidence, standing alone *227 and unrebutted, might conceivably be sufficient to prove fair market value, it can not be sufficient to establish the amount of the basis of the predecessor corporation. We are not shown when or in what manner the assets were acquired by that corporation, e.g., whether acquired by the issuance of its stock, or acquired by that corporation in connection with a reorganization. Even if we were to assume that the assets were carried on the books of the predecessor at cost, this fact would not necessarily show the basis for ascertaining loss as to the assets acquired before March 1, 1913; see section 202 (b) (2), Revenue Act of 1921; and there would still be unresolved whether the cost figure represented original cost or cost less depreciation allowed or allowable. Nor is there any evidence by which we may determine whether the inventories of the predecessor were carried on its books at cost, cost or market price, or at some other basis. Because of our general disinclination to decide a question such as this upon a proposition of failure of proof, we have considered the pleadings and the record with the utmost care and attention. That consideration compels the conclusion that respondent *228 is correct in his contention that petitioner has failed to prove the basis of its predecessor corporation for determining loss as to the assets acquired by petitioner in 1922. Therefore, we can not say that respondent erred in including in petitioner's invested capital "property acquired in a taxfree reorganization in 1922, at a figure of $200,491.01 instead of at the substitute basis of $526,387.92." As we have already indicated, it is our opinion, and respondent does not contend to the contrary, that petitioner acquired its assets in 1922 in connection with a tax-free reorganization. Therefore, it is unnecessary to consider petitioner's alternative contention which it urged in the event that we should determine that the 1922 transaction was not a reorganization giving rise to a substituted basis. The next question relating to the computation of petitioner's invested capital is whether petitioner is entitled to include in its invested capital the deficit in earnings and profits of its predecessor, pursuant to sections 718 (a) (7) and 718 (c) (5) of the Internal Revenue Code. The first of the sections mentioned above provides that there shall be included *229 in the invested capital of a transferee, as defined in section 718 (c) (5) that "portion of the deficit in earnings and profits of a transferor attributable to property received * * *." Since, in this case, all the transferor's property was transferred, all of its deficit in earnings and profits would be so includible if petitioner qualifies under section 718 (c) (5). Section 718 (c) (5) provides as follows: "(5) Deficit in Earnings and Profits - Earnings and Profits of Transferor and Transferee. If a corporation (hereinafter called 'transferor') transfer substantially all its property to another corporation formed to acquire such property (hereinafter called 'transferee'), if - "(A) the sole consideration for the transfer of such property is the transfer to the transferor or its shareholders of all the stock of all classes (except qualifying shares) of the transferee. (In determining whether the transfer is solely for stock, the assumption by the transferee of a liability of the transferor or the fact that the property acquired is subject to a liability shall be disregarded); "(B) the basis of the property, in the hands of the transferee, for the purposes of this subsection, *230 is determined by reference to the basis of the property in the hands of the transferor;" "(C) the transferor is forthwith completely liquidated in pursuance of the plan under which the acquisition of the property is made; and "(D) immediately after the liquidation the shareholders of the transferor own all such stock; "for the purposes of this subchapter, in computing the equity invested capital for any day after the date of the acquisition of the property, the earnings and profits or deficit in earnings and profits of the transferee and the transferor shall be computed as if, immediately before the beginning of the taxable year in which such transfer occurs, the transferee had been in existence and sustained a recognized loss, and the transferor had realized a recognized gain, equal to the portion of the deficit in earnings and profits of the transferor attributable to such property." The respondent contends petitioner does not qualify under subsections (A) and (D) of section 718 [(c)] (5) - in other words, that the sole consideration for the transfer of the property, in this case, was not the transfer to the transferor or its shareholders of stock of the transferee. The *231 respondent points to the payment of cash as well as the issuance of stock, and takes the position that this statute, like that which was being construed by the Supreme Court in Helvering v. Southwest Consolidated Corporation, 62 Sup. Ct. 546, 315 U.S. 194, "leaves no leeway" when it sets up as a condition that the sole consideration for the transfer of the property be the issuance of stock. We agree with the respondent. No authority has been presented to us for any broader interpretation of a statute requiring that "the sole consideration of a transfer" be stock, or that a transfer of property be "solely in exchange for stock." We conclude that petitioner is not entitled to include in its invested capital the deficit in earnings and profits of its predecessor. Petitioner asks that it be allowed a credit for debt retirement in the amount of $50,000 stipulated to have been made subsequent to September 1, 1942. Petitioner concedes it made no claim for the credit in its return for 1942, as required by section 783 (a) of the Internal Revenue Code. Therefore, it is not entitled to such credit in the taxable year. Respondent has concluded that petitioner *232 is entitled to an additional deduction in the amount of $4,573.91 for amortization of emergency facilities, and an additional deduction in the amount of $5,157.46 for depreciation. Decision will be entered under Rule 50. Footnotes
*. This amount minus the sum of $22,628.10 (representing current liabilities of Regina Co. and its receivers assumed and paid by petitioner), and minus the sum of $12,000 (the amount of the mortgage on real estate assumed by petitioner) is the amount ($526,387.92) claimed by petitioner to be includible in its invested capital.↩
*. This figure represents the net value of the assets of petitioner as of April 16, 1922, in the amount of $179,862.62, plus adjustments totaling $21,525.31 minus adjustments totaling $896.92. ↩
**. These figures are taken from respondent's exhibit A. No explanation is given for the apparent discrepancy between the total figure shown above and the figure of $1,211,978.28 appearing in the statement attached to the determination of deficiency.↩
1. See also section 202 (c) (3), Revenue Act of 1921.↩